**STATE of Utah, in the Interest of J.W.F., a person under 18 years of age.**

**Petition of Winfield D. SCHOOLCRAFT.**

**No. 910163–CA.**

Court of Appeals of Utah.

Dec. 27, 1991.

---

Winfield D. Schoolcraft, pro se.

Robert K. Hunt (argued), Findley P. Gridley, Gridley, Echard & Ward, Ogden, for J.W.F.'s Foster Parents.

Jan Arrington (argued), Ogden, guardian ad litem, for J.W.F.

Carol L.C. Verdoia (argued), Human Services Div., Salt Lake City, for State of Utah.

Before BENCH, P.J., and GARFF and JACKSON, JJ.

BENCH, Presiding Judge:

This case is before us following a remand by the Utah Supreme Court to the juvenile court for a determination of whether it would be in the child's best interests for appellant Schoolcraft to have custody of J.W.F. *See In re J.W.F.*, 799 P.2d 710 (Utah 1990). Schoolcraft appeals the juvenile court's decision that it would not be in the child's best interests for him to have custody. We affirm.

Inasmuch as the facts of this case have been adequately and fully discussed in the previous opinions of this court and the supreme court, we give but a brief factual background. J.W.F. was born to Schoolcraft's wife, Linda Schoolcraft, while they were separated. They had been separated for a year prior to the birth. Schoolcraft became aware of J.W.F.'s existence approximately one year after the birth when he learned that the State had filed a neglect and abandonment petition against Linda Schoolcraft and Michael Ford, the putative father of J.W.F.[1] Schoolcraft then filed a petition in juvenile court seeking custody of J.W.F., alleging that he was the presumed father because he was still legally married to J.W.F.'s mother at the time of the birth.

The juvenile court found that Schoolcraft was not the biological father of J.W.F. based upon a blood test and the fact that J.W.F. is partly of African ancestry while both appellant and Linda Schoolcraft are of Anglo–Saxon ancestry. The juvenile court ruled that because Schoolcraft was not the biological father of J.W.F., he did not have standing to seek custody and therefore dismissed his petition.

This court affirmed the juvenile court's denial of standing but the Utah Supreme Court reversed, holding that Schoolcraft had standing to seek custody as J.W.F.'s stepfather. The supreme court remanded the matter to the juvenile court to "determine what custody arrangement would serve the best interests of J.W.F. and act accordingly." *Id.* at 716. On remand, the juvenile court held that it would be in the best interests of J.W.F. to be placed in the permanent custody of J.W.F.'s foster parents in whose care he had been since the juvenile court ruled shortly after his birth that he had been abandoned. Schoolcraft now appeals that ruling.

1. Schoolcraft argues that the juvenile court, this court, and the supreme court, have all erred because the biological father has never been produced or legally proven to exist. This argument misses the point upon which this case now rests. In the initial trial proceeding, the juvenile court found that appellant was not the biological father. This finding was affirmed by this court and by the supreme court. The identity of J.W.F.'s biological father is therefore no longer relevant to the discussion of whether Schoolcraft, as J.W.F.'s legal stepfather at birth, should now have custody.

## STANDARD OF REVIEW

It is well settled that we give great deference to the trial court when it makes a custody determination in divorce proceedings.

> We should note, also, that the trial court is given particularly broad discretion in the area of child custody.... A determination of the "best interests of the child" frequently turns on numerous factors which the trial court is best suited to assess, given its proximity to the parties and the circumstances. Only where trial court action is so flagrantly unjust as to constitute an abuse of discretion should the appellate forum interpose its own judgment.

*Jorgensen v. Jorgensen,* 599 P.2d 510, 511–12 (Utah 1979). This same deference is due a juvenile court's custody decisions for the same reasons. Therefore, the juvenile court's determination of what is in the best interests of J.W.F. will not be overturned by this court on appeal unless "the evidence clearly shows that the custody determination was not in the best interests of the child or that the trial court misapplied applicable principles of law." *Smith v. Smith,* 726 P.2d 423, 425 (Utah 1986).

## ANALYSIS

In essence, Schoolcraft challenges the juvenile court's holding based upon his claim that he had a right to custody of J.W.F. and that the juvenile court should not have awarded custody to the foster parents unless Schoolcraft was found unfit to be a parent.[2] Schoolcraft argues that since the juvenile court found that "[t]he Schoolcrafts are free of any significant mental or psychopathological disorders, and appear capable of raising a child, in spite of the age differences between themselves and J.W.F.," he was found to be a fit prospective parent. Schoolcraft then concludes

that the trial court erred in not granting him custody.

Schoolcraft's argument fails because, as the supreme court expressly declared, he did not have any "presumption of entitlement of custody," by virtue of his status as legal stepfather. *In re J.W.F.,* 799 P.2d at 716. As the juvenile court correctly concluded, the foster family and Schoolcraft were on "equal footing to seek legal custody, neither having any greater legal right under color of law than the other to have the child, and custody should therefore be granted on the basis of what is in the best interest of the child." In cases such as this, where more than one set of prospective parents may seek permanent custody of the same child, there need not be any disqualification of one set or the other as being unfit before custody is awarded. Both sets of prospective parents may be able to provide a fine home for the child. The question for the trier of fact is simply, "In which of two acceptable possible homes would it be in the best interests of the child to be placed?" The juvenile court looked at all the relevant factors brought to its attention and made this truly difficult and weighty decision, which decision we will not lightly disturb.

The issue properly before this court then is whether the juvenile court abused its discretion in holding that it was in the best interests of J.W.F. that he live with the foster parents. The juvenile court gave the following reasons, among others, for its decision:

> [The foster parents] are younger and better equipped to raise an active young child than Schoolcrafts are. They have better income, greater demonstrated ability over a long period of home life, and a close bond with J.W.F., who has known no one else as parents. Advantages the [foster parents] offer include good health

---

**2.** Schoolcraft raises additional issues which were previously decided contrary to Schoolcraft's position either by this court, *see In re J.W.F. v. Schoolcraft,* 763 P.2d 1217 (Utah App. 1988), or the supreme court, *see In re J.W.F.,* 799 P.2d 710. Inasmuch as the rulings on those issues have become the law of the case, we do not revisit them. *Dixon v. Stoddard,* 765 P.2d

879, 881 (Utah 1988) (decision of supreme court becomes law of the case on remand). Schoolcraft also raises several other issues, but inasmuch as the supreme court remanded only the issue of what custody arrangements would be in J.W.F.'s best interests, we limit our discussion to that issue.

care; greater familiarity with J.W.F. as his primary care providers; extensive family resources, including association for J.W.F. with a mixed-race child near to J.W.F.'s age who was adopted by [the foster mother's] sister and who is in the role of a "cousin" to J.W.F. To change custody now would be substantially disruptive and damaging to J.W.F.

The forgoing reasons appear particularly relevant to a proper determination of what would be in J.W.F.'s best interests. Schoolcraft does not argue otherwise. Nor does he show what harm would occur to J.W.F. by being placed in the custody of the foster parents. Inasmuch as School-craft has failed to show how the evidence "clearly shows that the custody determination was not in the best interests of the child or that the trial court misapplied applicable principles of law," *Smith*, 726 P.2d at 425, we affirm the trial court's decision.

GARFF and JACKSON, JJ., concur.